UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FAUD JARRAH, and SUHAILA JARRAH, | HONORABLE JOSEPH E. IRENAS |
| Plaintiffs, | CIVIL ACTION NO. 04-2365 (JEI) |
| v. | |
| TRUMP HOTELS & CASINO RESORTS, INC., MEDICAL ONE A.C.E.C., INC., and LINDA A. ERTHAL | **OPINION** |
| Defendants. | |

**APPEARANCES:**

SOLOFF & ZERVANOS
By:  Jeffrey P. Fritz
1800 Chapel Avenue
Suite 302
Cherry Hill, NJ 08002

LAW OFFICES OF SOLOFF & ZERVANOS
By:  John Nikitas Zervanos
1515 Locust Street
8th Floor
Philadelphia, PA 19102
        Counsel for Plaintiffs


COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
By:  Russell L. Lichtenstein
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401-4891
        Counsel for Defendant Trump Hotels & Casino Resorts, Inc.

STAHL & DELAURENTIS, PC
By:  Dominic A. DeLaurentis, Jr.
1103 Laurel Oak Road
Suite 103
Voorhees, NJ 08043
        Counsel for Defendants Medical One A.C.E.C., Inc. and Linda
        A. Erthal

**IRENAS**, Senior District Judge:

Plaintiffs commenced this personal injury action on May 20, 2004, against Defendants Trump Hotels & Casino Resorts, Inc. ("Trump"), Medical One A.C.E.C., Inc. ("MO"), and Linda A. Erthal ("Erthal").[1]  Plaintiffs allege that Trump is liable for breaching a duty to provide competent emergency medical service. Plaintiffs also claim that Trump is liable through vicarious liability and apparent authority.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The law of New Jersey, the forum state, applies on the substantive issues in this case.  *Marino v. Industrial Crating Co.*, 358 F.3d 241, 243 n.2 (3d Cir. 2004).

Trump moves for summary judgment and for indemnity.  For the reasons set forth below, the Motion for Summary Judgment will be granted, and the Motion for Indemnity will be dismissed as moot.


                                  **I.**

Trump has contracted with MO since July 22, 2002, for MO to operate a medical station on Trump's premise.  The contract between Trump and MO stated that:

     MO shall be solely responsible for the operation of the

_____

[1]  Defendant MO declared Chapter 13 Bankruptcy and the Bankruptcy Court confirmed its Plan of Reorganization on October 12, 2005.  (MO Ex. B).  MO and Plaintiffs entered into a Consent Order that permitted Plaintiffs' claims for medical malpractice and personal injury against the medical service provider to the extent of available insurance coverage.  (MO Ex. A).

                                   2

> medical station and is acting as an independent
> contractor hereunder.  No relationship of employer and
> employee is created by this Agreement between MO and
> [Trump].  [Trump] shall exercise no control or
> direction over the methods by which MO and the nurses
> and physicians who contract with MO perform their work
> and function.  No MO employee performing services
> hereunder shall have any claim under this Agreement or
> otherwise against [Trump] for salary, or compensation,
> disability or unemployment insurance benefits or any
> other employee benefits of any kind.

(Trump Ex. A, at p. 6).

The contract term is three years.  (Trump Ex. A, at p. 8).
As consideration for MO's service, Trump provides a flat fee of
$185,000.00 for the first year of the contract.  (*Id.*).  This fee
would be renegotiated each subsequent year, but would not
increase by more than 5%.  (*Id.*).  The contract also requires MO
to carry insurance, and to indemnify Trump against loss of life,
bodily or personal injury.  (*Id.* at pp. 6-7).

The contract requires that a registered nurse licensed by
New Jersey Board of Nursing be on-site for a minimum of 16 hours
per day, 7 days per week.  (Trump Ex. A, at p. 2).  In addition,
a physician is required to be on-site for a total of 15 hours per
week, and on-call 24 hours per day, 7 days per week.  (*Id.*).  MO
has the sole responsibility for the selection of physicians and
nurses to staff the medical station.  (*Id.*).

On or about February 24, 2003, Plaintiff Faud Jarrah
("Faud") was visiting Trump's casino and hotel.  At approximately
6:00 P.M., Faud complained of dizziness, difficulty moving his

3

left leg and left arm, slurred speech, and inability to hold his
bladder.

Faud requested emergency medical assistance, and was
attended to by Erthal and other security personnel.  Erthal was
an employee of MO; she was not employed by Trump.  Erthal
performed a medical evaluation on Faud and, after learning that
he was diabetic, directed him to sit down and eat.  She did not
recommend any treatment or arrange for Faud to be transported to
a hospital.

After Faud ate, his symptoms continued to worsen.  Because
of his symptoms, his wife and friend drove him from the Casino to
Lehigh Valley Hospital and Health Network in Allentown.  In the
hospital, Faud discovered that he had actually suffered a
brainstem infarction (a type of stroke) with left side
hemiparesis.  Following this diagnosis, Faud's family and
physicians sought information regarding his condition at the
casino.  The information was furnished by Trump's Risk Management
Department.

Plaintiffs claim that Erthal's misdiagnosis prevented and
delayed him from receiving proper care.  They also claim that
Trump is independently and vicariously liable, and liable through
apparent authority.

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

## III.

### A.

Plaintiffs claim that Trump is independently liable for the

alleged negligence.  Under New Jersey law, to establish premises liability, Plaintiffs bear the burden of proving that the premises owner breached the duty of care owed to them.  *Jerista v. Murray*, 185 N.J. 175, 191 (2005).

The question of whether a duty exists is a matter of law properly decided by the Court.  *Strachan v. John F. Kennedy Memorial Hosp.*, 109 N.J. 523, 529 (1988).  Determination of the existence of a duty "is largely a question of fairness or policy."  *Id.*  "The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."  *Kelly v. Gwinnell*, 96 N.J. 538, 544 (1984).

Under New Jersey law, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is in the scope of the invitation."  *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003).  This duty arises out of the fact that business owners "are in the best position to control the risk of harm.  Ownership or control of the premises, for example, enables a party to prevent the harm."  *Kuzmicz v. Ivy Hill Park Apartments, Inc.*, 147 N.J. 510, 517 (1997).

Faud was not injured by an unsafe physical condition on Trump's premises.  Rather, his injury was the result of alleged medical negligence by MO's nurse.  Thus, the question that the

Court must resolve is whether Trump owed a duty to Faud to provide medical care.

Plaintiffs cite § 314A of the Restatement (Second) of Torts for the proposition that Trump owed them a duty to provide medical care.  Section 314A states:

> (1) A common carrier is under a duty to its passengers to take reasonable action . . .
>     (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> (2) An innkeeper is under a similar duty to his guests.
>
> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

No reported cases from New Jersey courts have considered whether a hotel has a duty to render medical aid to its business invitees.  However, the Third Circuit has offered a prediction as to how the New Jersey Supreme Court would rule on this question.[2]  *See Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173 (3rd Cir. 1994).

In *Lundy*, the plaintiff, Lundy, suffered a cardiac arrest

---

[2]  Because New Jersey courts have not answered this question, the Court will rely on the Third Circuit's prediction. *See Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991) ("where applicable state precedent is . . . absent . . ., we must determine or predict how the highest state court would rule.").

and fell to the ground unconscious while gambling at TropWorld
Casino.  Three other patrons, including a critical care nurse, a
pulmonary specialist, and a surgeon, quickly ran to Lundy and
began to assist him.  At the time, Lundy was unresponsive, not
breathing, and without a pulse.  The TropWorld security personnel
summoned an ambulance, and about 20 minutes elapsed between the
time Lundy suffered cardiac arrest and the time the ambulance
arrived.

TropWorld had a medical station with an on-call nurse.
Prior to the arrival of the EMT, the nurse cared for Lundy.
However, the nurse and the medical station did not have the
equipment and skilled personnel necessary to perform an
intubation, which was a necessary procedure for Lundy.  Lundy
subsequently sued the casino, arguing that TropWorld breached a
duty to provide medical aid.

The Third Circuit rejected the plaintiff's claim.  Because
no New Jersey Supreme Court cases clearly delineated the duties
owed by a casino to patrons suffering medical emergencies, the
Third Circuit had to predict New Jersey law on this question.
*Lundy*, 34 F.3d at 1178.  The *Lundy* Court considered, as an
analogy, the duty owned by an employer to its employees suffering
medical emergencies.  *Id.*

In *Szabo v. Pennsylvania R.R. Co.*, 132 N.J.L. 331 (E. & A.
1945), New Jersey's highest court held that, in the absence of a

contract or statute, an employer generally had no duty to provide medical service to treat an ill or injured employee, even if the illness or injury was the result of the employer's negligence. *Lundy*, 34 F.3d at 1178.  However, if the employee, while engaged in the work of his or her employer, sustained an injury rendering him or her helpless to provide for his or her own care, the employer must secure medical care for the employee.  *Id.* (citing *Szabo*, 132 N.J.L. at 331).

In the opinion of the Third Circuit, a casino owner in New Jersey owed no greater duty to its patrons than an employer owed its employees while they are engaged in their employer's business.  *Lundy*, 34 F.3d at 1179.  Thus, a casino owed no duty to provide medical service to its patrons.  But when a patron sustained an injury rendering him or her helpless, the casino had the duty to secure medical care for that patron.  *Id.*

Section 314A of the Restatement further bolstered this point.  The pertinent commentary following § 314A indicates that the duty "to take reasonable action . . . to give . . . first aid" in times of emergency requires only that innkeepers procure appropriate medical care as soon as the need for such care becomes apparent and provide such first aid as the innkeeper's employees are reasonably capable of giving.  *Lundy*, 34 F.3d at 1179.  Thus, the *Lundy* court concluded that "[w]e are confident the New Jersey Supreme Court would decline to impose liability on

TropWorld for failing to maintain [intubation] capability."[3]  *Id.*

In this case, Trump owed no duty to Faud to provide medical service, but only a duty to summon medical help if Faud's medical condition rendered him helpless.  *See Lundy*, 34 F.3d at 1178-79. However, Plaintiffs' allegation is that Nurse Erthal misdiagnosed Faud's condition, not that Trump failed to summon help.  Indeed, the undisputed fact showed that Trump provided an emergency medical post on its premises, and security personnel promptly summoned help from the medical personnel stationed in the post.

The undisputed fact also showed that Faud was not rendered helpless by his conditions.  After he suffered a stroke, he was able to request emergency medical assistance.  Unlike *Lundy*, where the plaintiff was alone, unresponsive, not breathing, and without a pulse, Faud was conscious and with his family.  In any event, Trump properly discharged its duty to provide "first aid after it [knew] . . . that [Faud was] ill or injured, and to care for them until they can be cared for by others" once its security

_____

[3]  The Third Circuit also rejected the argument that even if TropWorld had no duty to provide a level of care encompassing intubation, TropWorld voluntarily assumed a duty to provide such care and breached that duty by failing to provide it.  The Circuit's position was based on New Jersey's Good Samaritan Act, § 2A:62A-1 N.J.S.A.  *Lundy*, 34 F.3d at 1180.  The Act provides that anyone "who in good faith renders emergency aid at the scene of an . . . emergency to the victim . . . shall not be liable for any civil damages as a result of acts or omissions by such person in rendering the emergency care."  "We believe the Supreme Court of New Jersey would hold that this mandate protects TropWorld from liability in the situation before us."  *Id.*

personnel summoned help from the medical post.  Restatement
(Second) of Torts § 314A (1965).  The fact that Defendants MO and
Erthal might have provided negligent medical care is not a breach
of any duty by Trump.


                                B.

     Plaintiffs argue that Trump should be held vicariously
liable for the negligence of Defendants MO and Erthal.

     Under New Jersey law, it is "well-settled that when a person
engages an independent contractor to do work that is not itself a
nuisance, he is not vicariously liable for the negligent acts of
the contractor in the performance of the contract."  *Puckrein v.
ATI Transport, Inc.*, 186 N.J. 563, 574 (2006).

     Three exceptions to this general rule exist under New Jersey
law: "(1) where the principal retains control of the manner and
means of doing the work subject to the contract; (2) where the
principal engages an incompetent contractor; or (3) where the
activity constitutes a nuisance *per se*."  *Puckrein*, 186 N.J. at
574.  Plaintiffs claim that Trump is liable because it reserved
sufficient control of Defendants MO and Erthal, and because it
hired an incompetent contractor.

     To establish that a principal hired an incompetent
contractor, "a plaintiff must show that the contractor was, in
fact, incompetent or unskilled to perform the job for which

                                11

he/she was hired, that the harm that resulted arose out of that incompetence, and that the principal knew or should have known of the incompetence." *Puckrein*, 186 N.J. at 576; *see also Mavrikidis v. Petullo*, 153 N.J. 117, 136-37 (1998).

Plaintiffs failed to establish that Trump knew or should have known of the incompetence of Defendants MO and Erthal.[4] Plaintiffs did not offer any evidence on this issue, and merely asserted in their brief that Defendants MO and Erthal were incompetent and therefore Trump should be held liable. (Pl. Br. at p. 6). This is insufficient to establish Trump's liability.

Alternatively, Plaintiffs argue that Trump exerted sufficient control over MO and Erthal that it should be held it liable. Plaintiffs claim that the agreement between Trump and MO allows Trump to control the staffing times, staffing levels, competency of staff, staffing selection, follow-up treatment and

---

[4] Because it is unnecessary to reach the issue of Defendants MO and Erthal's competency, the Court renders no opinion on that issue.

However, the Court notes that diagnosis of a stroke is a very difficult task even for trained physicians. Indeed, "[m]any patients with stroke symptoms are examined by emergency room doctors who are uncomfortable deciding whether the patient is really having a stroke . . . or is suffering from another condition." Gina Kolata, *Lost Chances for Survival, Before and After Stroke*, N.Y. TIMES, May 28, 2007.

In fact, many "hospitals say they cannot afford to have neurologists on call to diagnose strokes, and cannot afford to have M.R.I. scanners, the most accurate way to diagnose strokes, for the emergency room." *Id.*

care, and non-medical office supplies to be used by Medical One in performance of its duties.  In addition, Trump requires that its Risk Management Department be promptly notified by MO of any referrals to emergency medical care.  Plaintiffs claim that these facts establish that Trump controls MO's manner and means of performing the contract.

The Court is unpersuaded by this argument.  The agreement between the parties sets forth the minimum requirement concerning staffing level and qualification.  The agreement requires that a registered nurse licensed by the New Jersey Board of Nursing be on-site for a minimum of 16 hours per day, 7 days per week. (Trump Ex. A, at p. 2).  In addition, a physician is required to be on-site for a total of 15 hours per week, and be on-call 24 hours per day, 7 days per week.  (*Id.*).  MO had the sole responsibility for the selection of physicians and nurses to staff the medical station.  (*Id.*).

As described above, the agreement does not give Trump any control over the manner in which MO practices medicine.  Indeed, the agreement specifically provides:

> MO shall be solely responsible for the operation of the medical station and is acting as an independent contractor hereunder.  No relationship of employer and employee is created by this Agreement between MO and [Trump].  [Trump] shall exercise no control or direction over the methods by which MO and the nurses and physicians who contract with MO perform their work and function.

(Trump Ex. A, at p. 6).

13

The contractual language is unambiguous, and it is clearly intended to establish a minimum level of service that MO must provide.  Such requirements apply only to the quality of services provided, and do not transform an independent contractor into an employee.  *See Marion v. Public Serv. Elec. & Gas Co.*, 72 N.J. Super. 146, 152 (App. Div. 1962) (principal's immunity is not lifted by the exercise of general supervisory oversight as is necessary to insure that the performance of agreement); *see also McNulty v. Dover Mun. Utilities Authority*, 2007 WL 102587, *4 (N.J. Super. App. Div. Jan. 17, 2007).

In addition, Plaintiffs failed to produce any evidence showing that Trump was in fact controlling the manner in which MO staff practiced medicine, although it had no contractual right to do so.  Thus, the Court concludes that Defendants MO and Erthal are independent contractors, and that Trump is not liable for their alleged negligence.

C.

Finally, Plaintiffs argue that Trump is liable under the doctrine of apparent authority.

Under New Jersey law, "a principal is liable for the tortious acts of an agent acting within the scope of his or her authority."  *Baldasarre v. Butler*, 132 N.J. 278, 289 (1993).  An agency relationship can be established through apparent

14

authority.  New Jersey courts have recognized that "apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority." *Dymburt v. Rao*, 881 F. Supp. 942, 946 (D.N.J. 1995) (Pisano, M.J.) (citing *Arthur v. St. Peters Hospital*, 169 N.J. Super. 575, 580 (Law Div. 1979)).

Apparent authority arises when a principal "acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or may not possess." *Lampley v. Davis Mach. Corp.*, 219 N.J. Super. 540, 548 (App. Div. 1987).  "In addition, the 'essential element of reliance' must exist before apparent authority can be found." *Bahrle v. Exxon Corp.*, 279 N.J. Super. 5, 25 (App. Div. 1995) (quoting *Wilzig v. Sisselman*, 209 N.J. Super. 25, 36 (App. Div. 1986)).

Plaintiffs attempt to rely on *Arthur v. St. Peters Hospital* to establish Trump's liability under the theory of apparent authority.  169 N.J. Super at 575.  In *Arthur*, plaintiff sued the hospital and various doctors after an emergency room physician misread his x-ray.  *Id*. at 578.  The hospital claimed that the physicians were independent contractors.  *Id*. at 577.  The Law Division judge applied the doctrine of apparent authority to deny the hospital's motion for summary judgment.  *Id*. at 578-79.

Here, an important difference renders *Arthur* inapplicable. The *Arthur* court noted that persons seeking medical help through

15

the emergency room are not aware of the status of the various professionals working there, and the patient therefore must rely on the reputation of the hospital.  *Arthur*, 169 N.J. Super. at 583.  Thus, the court found the patient would assume the physicians were employees of the hospital.  *Id.*

Trump is not a provider of medical services.  Thus, it would be unreasonable for a person who gambles at the casino to rely on Trump to provide quality medical service.  *See Neal ex rel. Scott v. New Jersey State Dept. of Corrections*, 2002 WL 31741497 (N.J. Super. App. Div. Oct. 24, 2002) (provider of medical personnel to prison was not a hospital; therefore inmates were not relying on its reputation and could not establish apparent authority).

In addition, Plaintiffs did not offer any evidence that Faud relied on Trump's medical expertise when he entered the casino.  Thus, the "essential element of reliance" is missing in this case.  *Bahrle*, 279 N.J. Super. at 25.  Trump, therefore, cannot be held liable under the doctrine of apparent authority.

**IV.**

For reasons set forth above, the Court will grant Trump's Motion for Summary Judgment.  Because Trump is not liable to Plaintiffs, its Motion for Indemnity will be denied as moot.


Date: May 30, 2007


_____
    s/Joseph E. Irenas
JOSEPH E. IRENAS, S.U.S.D.J.